## BOONE COUNTY BANK *v.* BYRUM.

### Opinion delivered March 31, 1900.

1. SUBROGATION—SURETIES OF DE FACTO OFFICER.—Where, although a sheriff failed to file his bond as collector within the time required by law, such bond was duly approved, and he collected the taxes, a portion of which he misappropriated, the sureties on his bond, who made good his deficit, are entitled to be subrogated to the right of the state to proceed against his property. (Page 73.)

2. SAME—FUND IN BANK.—Where a collector deposited in a bank a portion of the taxes collected by him, and the bank, having notice that such money belonged to the state, appropriated it to the payment of an individual indebtedness of the collector, sureties on the collector's bond, who paid to the state the amount misappropriated by the collector, are entitled, as against the bank, to be subrogated to the state's right to the deposit, nor is it a defense in favor of the bank that they did not pay the interest and penalty accruing on account of the collector's default. (Page 74.)

3. APPEAL—REVERSAL.—Where a collector deposited in a bank a portion of the taxes collected by him, and the bank appropriated it to the pay-

ment of an individual indebtedness of the collector, and some of the sureties on the collector's bond, who had paid their *pro rata* of his deficit to the state, sued the bank and the other sureties who paid their *pro rata* of the deficit, asking to be subrogated to the state's rights to the deposit, those of the defendant sureties who failed to appear and ask relief are not entitled to have the decree making distribution among those asking relief reversed, since the error, if any, could have been corrected in the trial court on motion. (Page 75.)

4, TRIAL—RELIEF.—Where a part only of the sureties of a collector who contributed to make a deficit due by him asked to be subrogated to the state's claim against a fund in bank, and the other sureties so contributing, though summoned, did not appear nor ask for relief, it was not error to appropriate the fund so as to indemnify the sureties who asked for relief, without regard to the claims of the sureties not appearing. (Page 75.)

Appeal from Boone Circuit Court in Chancery.

BRICE B. HUDGINS, Judge.

*Watkins & Walker,* for appellants, Watkins, Parker and Crump.

The decree was erroneous in awarding to appellees the part of the fund due by the bank, and in giving the state any part of the fund. "Equality is equity" is the foundation of the doctrine of subrogation. 3 Pom. Eq. § 1418; 1 *id.* § 406; 31 Ark. 42; 34 Ark. 580. The chancellor erred in refusing appellant's subrogation. Sheld. Sub. § 141. The state had the right of recovery of the trust fund from the bank, and, having received satisfaction, the fund is no longer a trust fund. 2 Perry, Tr. (3 Ed.) § 841; 104 U. S. 54; Wait. Fraud. Conv. § 44. The sureties are not volunteers. 34 Ark. 580.

*G. J. Crump,* for appellant, Boone County Bank.

Appellees seek to apply the rules of subrogation, and their rights, together with those of appellants, are to be determined according to equity. 2 Brandt, Sur. & Guar. § 305; Sheld. Sub. § 411; 31 Ark. 42; 1 Pom. Eq. 406, 407. The debt must be fully paid before a surety can claim subrogation. 34 Ark. 113; 40 Ark. 132; 121 Ind. 241; Sheld. Sub. § 127. A surety who pays the debt of his principal, when there is no legal obligation resting on him to do so, is a mere volunteer, and not entitled to subrogation. 83 Ky. 49; 3 Allen, 524; 3 Rand.

490; 3 Metc. 327; 15 B. Mon. 134; 21 La. Ann. 722. The office of collector became vacant upon the failure to file the bond in time. Sand. & H. Dig., §§ 6560–3; 37 Ark. 386; 42 Ark. 114; *ib.* 117; 42 Ark. 394; 63 Ark. 337. This being true, the sureties were under no legal obligation to pay the debt.

*J. W. Story* and *W. S. & F. L. McCain*, for appellees:

The regulations as to the time for filing the collector's bond are intended for the protection of the state only; and the sureties can not plead such a defense. 22 Ark. 237; 28 Ark. 306. The liability of the sureties is all discharged. The sureties who declined to become parties are not entitled to any relief now. 61 Ark. 189; 24 Ill 517; 102 Ind. 581; 88 Ind. 359–361; 51 Ala. 301; 49 Barb. 444; 54 N. Y. 675.

BATTLE, J. The statutes of this state provide that the sheriff of each county shall be *ex-officio* collector of all taxes of his county, and, before entering upon his duties as such collector, "shall give bond and security to the state;" that such bond "shall be conditioned for the faithful performance of the duties of his office, and for well and truly accounting for and paying over all moneys collected by him" in his official capacity; and that, "should he fail to give such bond before the first Monday in December of each year, the clerk of the county court shall immediately notify the governor, and some competent person having the requisite qualifications shall be appointed by the governor to perform the duties of collector." Sand. & H. Dig., §§ 6558, 6560, 6563.

In this case the sheriff filed his bond as collector of the taxes of 1895 on the first Monday in December, 1895. No notice of his failure to file his bond in time was given to the governor, and no one was appointed collector in his stead. His bond was approved by the county court, and he collected the taxes of 1895, and failed to pay a large portion of the same, and the sureties upon his bond made good the deficit. In doing so, they were not volunteers or strangers. He was at least *de facto* collector, and they were estopped from denying their liability on his bond. Having enabled him to get pos-

session of the public moneys, they were responsible for the pay-ment of the same to the proper officers, and, upon payment of the amount due the state on account of the default of their principal, became entitled to be subrogated to the right the state had to the sum in controversy. *People* v. *Beach*, 77 Ill. 52; *Jones* v. *Scanland*, 6 Humph. 195; *Dunphy* v. *Whipple*, 25 Mich. 10; *People* v. *Jenkins*, 17 Cal. 500; *Jones* v. *Gallatine County*, 78 Ky. 491; *Inhabitants of Trescott* v. *Moan*, 50 Me. 347; *Inhabitants of Wendell* v. *Fleming*, 8 Gray, 613; *Byrne* v. *State*, 50 Miss. 688.

*Wood* v. *State*, 63 Ark. 337, is unlike this case. In that case a county treasurer and his sureties executed a bond for the faithful performance of the duties of his office. The bond was approved by the county judge in vacation, and was after-wards rejected by the circuit court. He was ordered by the court to file a new bond within fifteen days. He failed to file the bond within the time allowed, and the office by virtue of the statute became vacant. Sand. & H. Dig., § 5399. This court held that the sureties on the rejected bond were not lia-ble for moneys received by their principal after the expiration of the fifteen days. The office was then vacant, and the bond was no longer of any force and effect.

The collector in this case, when he was collecting the reve-nue, deposited in the Boone County Bank $3,178 of the taxes of 1895 collected by him for the state. The bank, having no-tice at the time that the amount so deposited belonged to the state, appropriated it to the part payment of the indebtedness of the collector in his individual capacity, and refused to pay it to the state or to the sureties on the collector's bond. He collected other taxes of 1895 for the state, and appropriated them to his own use. The sureties paid to the state the amount of the taxes which he collected and misappropriated, but failed to pay the interest and penalty which accrued to the state on account of the default of the collector. The bank insists that the sureties are not entitled to be subrogated to the state's right to the $3,178 in its hands until they pay this interest and penalty. But this is not true. As against it or the collec-tor, the sureties are entitled to be subrogated; it is only the

state who can interpose any objection. Sheldon on Subrogation (2 Ed.) § 128. And it has released the collector and his sureties from the payment of the interest and penalty.

There were twenty-three sureties on the collector's bond. Twenty-one paid to the state the amount for which he was defaulter, and they were liable. Eleven of them brought this action against the collector, the bank, and the ten others who contributed to the payment of the amount misappropriated by their principal; and the plaintiffs asked to be subrogated to the right of the state to the $3,178. Only one of the sureties made defendant asked for any relief against the fund. The others failed to appear, made no defense, filed no answer, and asked no relief. The $3,178 was apportioned among those who asked relief according to the amounts paid by them. Three of those who failed to answer have appealed from the decree of the circuit court before the clerk of this court, and now insist that they were entitled to share in the distribution of the fund, and that the circuit court erred in denying them this right. But this contention is without merit. They remained silent when they should have spoken. Had they asked for relief, and shown that they were entitled to it, they certainly would have recovered it. On the other hand, had they asked for it, it might have been shown that they were not entitled to share in the distribution. It is now too late to ask for a correction of errors, if any were made, which were solely the result of their own silence. They cannot lawfully complain. Section 1061 of Sand. & H. Dig. provides: "A judgment or final order shall not be reversed for an error which can be corrected on motion in the inferior courts until such motion is made there and overruled." It is obvious that the error of which they complain, if any was committed, could have been corrected in the trial court, and that appellants are not entitled to a reversal on account of it.

The Boone County Bank insists that each surety who contributed to supply the deficit caused by the misappropriation of the state funds is entitled to a *pro rata* share of the $3,178, and that the decree should have been only for the *pro rata* share of those who asked for relief, and that the remainder of the state fund in its hand should have been left where the

court found it. The basis of this contention is unsound. The $3,178 did not at any time become the absolute property of the sureties who paid a portion of the amount necessary to supply the deficit, but a fund which the sureties who contributed had a right, by equitable proceedings, to have appropriated to indemnify them for losses sustained. No surety was entitled to any part of it after he had received or been paid the sum contributed by him. His right as to it extended no farther than was necessary for his indemnity. If he has been repaid, the whole of it became an indemnity to those who were unpaid, and the same was the result of any other act or omission which deprived him of his remedy against it for indemnity.

Decree affirmed.