CARROLL COUNTY BANK *v.* RHODES.

Opinion delivered December 15, 1900.

1. BANK—APPROPRIATION OF TRUST FUNDS.—Where a county collector deposited in a bank money collected for the state, and drew a check to pay a debt due by him to the bank, and the bank knew that the money belonged to the state, it will be liable to the state for the money so appropriated. (Page 47.)

2. SUBROGATION—SURETIES.—The sureties of a county collector who have paid to the State the amount of money misapplied by the collector to the payment of a debt due by him to a bank will be subrogated to the state's right of recourse against such bank. (Page 48.)

Appeal from Carroll Circuit Court in Chancery, Eastern District.

EDWARD S. McDANIEL, Judge.

*Rose, Hemingway & Rose* and *O. W. Watkins,* for appellant.

One who claims the right of subrogation must be governed by the maxim, *sic utere tuo ut alienum non laedas.* Sheldon, Sub. § 4. 3 Pom. Eq. Jur. note 1, § 1419 (2d Ed.) ; 49 Minn. 386 ; S. C. 32 Am. St. 566. A banker cannot excuse disobedience of a customer's order by setting up that he knew or had reason to believe that the customer's order was given in promotion of an unlawful purpose. 2 Morse, Banking (3d Ed.) § 317 ; 56 Ark. 508 ; 76 N. C. 482. The check was negotiable, and the law imposed upon the bank the duty of paying it; and the bank did not participate in the misapplication of the funds. 2 Morse, Banking (3d Ed.) 431 ; 126 Mo. 82 ; 122 Mo. 332 ; 45 N. Y. 735. In order to establish usury the agreement to charge more than ten per cent. must exist at the time the money is loaned. 63 Ark. 225, 230 ; 81 N. Y. 293. No subsequent agreement will bar the right to recover the

amount loaned.   55 Ark. 143; Tyler, Usury, 126; Perley, Interest, 210; 56 Ark. 334; Webb, Usury, §§ 307, 142.   To constitute usury the sum must be paid by the borrower to the lender.   A payment by a third person would not constitute usury.   Perley, Interest, 203; 25 Hun, 490; 37 N. Y. 356.   The directors of a corporation have absolute control of its affairs.   Sand. & H. Dig., § 1330; 51 Ark. 554. There was no usury, and if the bank had to pay out the money it received, the court should have rendered judgment against Bobo and other parties made defendants in the cross bill.   53 Ark. 271; 63 Ark. 385; 56 N. Y. 214; 64 N. Y. 294; 55 Ark. 143; 57 Ark. 550.   If the money with which Bobo & Maples paid the notes was public money, and they had no right to use the same, the bank has a right to judgment against them on the original notes.   1 Green- leaf, Ev. § 522; 3 Am. Dec. 446; 55 Ark. 143.

*J. V. Walker,* for appellees.

He who comes into equity must come with clean hands..   1 Pom. Eq. Jur. §§ 397-399.   One who has participated in a violation of law cannot be permitted to assert any right founded upon or growing out of an illegal transaction.   2 Beach, Cont. § 1618, and note 1; 17 L. C. P. 646; 1 Wallace (U. S.) 518, 17 L. C. P. 269; 18 L. C. P. 255; 5 Howard (U. S.) 353; 14 Howard, 70; 20 Curtis, 40.   If parties be *in pari delicto,* they will be left where they have placed themselves.   2 Beach, Cont. § 1779; 17 Am. Dec. 427; 44 Am. Dec. 718.   He that hath committed iniquity shall not have equity.   47 Ark. 311.   The proof established usury. Const. Ark. art. 19, § 13; Sand & H. Dig., § 5085; 55 Ark. 143.

*Crump & Seawel,* for appellees.

That which the bank ought by proper diligence to have known may be presumed to have been known. 18 Cent. L. J. 89; 104 U. S. 54; 84 Ind. 119.   The bank having knowledge that the funds were public, the sureties who paid the indebtedness to the state are subrogated to all the rights and remedies which the state previously possessed.   104 U. S. 54; 100 N. Y. 31; 52 N. Y. 1; 123 N. Y. 272; Sand. & H. Dig., §§ 1715, 1849, 1850.   The relation of debtor and creditor does not apply when the act of depositing is a misapplication of the fund.   124 N. Y. 324; 100 N. Y. 31.   The state having the right to follow the funds deposited by Maples, the appellees would be subrogated to its rights and remedies.   53 Ark. 303; Bisp. Eq. 335.   The bank and Maples were *particepes criminis* and

joint tort feasors.   L. R. 3 H. L. 14.   The court had the right to render judgment against some and for other of the plaintiffs. Sand. & H. Dig., § 5852.

BATTLE, J.   On the 15th day of October, 1897, J. L. Rhodes and 47 others instituted a suit in equity against A. P. Maples, N. C. Charles, J. P. Fancher, D. H. Seitz, M. L. Coxsey, and the Carroll County Bank, all of whom, except the bank and Maples, had signed the bond of Maples as sureties.   H. I. Seidel and W. R. Boyd, two other sureties on the bond, were not made parties, Seidel being insolvent and Boyd having died since the signing of the bond, leaving no estate.

Plaintiffs alleged in their complaint that the defendant, Maples, was duly elected sheriff of Carroll county, in this state, at the general election held in September, 1896; that he was duly commissioned as such sheriff, and afterwards qualified and entered upon the duties of such office; that he (Maples), plaintiffs, Seidel, Boyd, and the defendants, Charles, Fancher, Seitz and Coxsey, on, the 15th day of October, 1896, executed a bond to the state of Arkansas in the sum of $52,700, conditioned that he would faithfully perform the duties of collector for the county aforesaid, and well and truly pay over all moneys collected by virtue of his said office, according to law; that he (Maples) afterwards collected in Carroll county, for the year 1896, taxes for the state of Arkansas amounting to $6,983.90, and failed and refused to pay the same to the state, as the law and the conditions of his bond required him to do; that afterwards, on the 24th of August, 1897, the auditor of the state issued a warrant of distress against him and the sureties on his bond, and placed it in the hands of a constable of Carroll county, who collected of plaintiffs many sums of money, which are set out in their complaint.   They further allege that the Carroll County Bank was a corporation duly organized under the laws of Arkansas; that Maples, at various times, while he was collecting taxes in 1897 for the past year, deposited the moneys so collected by him with the bank to his individual credit; and that the bank at the time well knew that the moneys so collected were taxes due the state.   They asked that an account be taken of the amounts so deposited, and that they be subrogated to the rights of the state, and severally have judgment against the bank for the amounts respectively paid by them, or in proportion thereto.

On the 25th day of February, 1898, the bank filed its answer and cross-complaint. It admitted the election of Maples and the execution of the bond set out in the plaintiffs' complaint; that Maples had failed to pay a large amount of money collected by him as taxes for the state, as required by his bond; that the warrant of distress issued; and that the constable under it collected the amount set forth in the complaint. It admitted that Maples during the year 1896 deposited large sums of money with it, amounting in the aggregate to $7,000, but denied that the sums so deposited arose from the collection of taxes due the state of Arkansas, or that any part of the sums so deposited were sums which had been assessed against it for taxes of 1896; but alleged that Maples was indebted to it for an amount exceeding the taxes assessed against it for that year, and that he delivered to it a tax receipt for which the bank gave him credit on his personal account. It denied that it knew, or had any knowledge, that any money deposited with it during the year 1896 was money collected for the state of Arkansas for taxes. It alleged that the money was deposited by Maples in his individual capacity, and drawn out by him in the ordinary and usual course of business upon his checks; that it was at no time advised by said collector or anyone else that the money deposited by him, or the money drawn out of the bank by him upon his checks, was money he had collected as taxes. And it made many other allegations unnecessary to mention in this opinion.

After hearing the evidence adduced by all parties, the court found that there was no equity in the complaint as to plaintiffs A. S. Bobo, Len Nunnally, John A. Bridgford and W. H. Linzy, and dismissed it as to them; and further found as follows: "That the said A. P. Maples was the duly authorized collector of Carroll county, Arkansas, and that parties mentioned in the complaint as such are the sureties on his bond as such collector; that in the year 1897 he collected the taxes for said Carroll county for the year 1896, and that he deposited the money, or a great portion thereof, in the defendant bank; that the bank knew at the time it was revenue collected by him for the state of Arkansas; that the said A. P. Maples failed to account for and pay to the state of Arkansas, of the revenue so collected, the following amount, $6,983.90, and that the same was paid by his said sureties as follows: [Here the names of the sureties and the amount paid by each one are stated]; that the defendant bank retained, of said money so deposited, in payment of indebtedness due it the sum of $3,785, which said sum should have been ap-

plied to the payment of the revenue to the state of Arkansas;" and "that the state had a lien on said funds, and that his sureties who paid said collector's shortage to the state of Arkansas are entitled to be subrogated to the rights of the state of Arkansas to said sum in proportion to the amount so paid by said sureties as hereinbefore set forth." And the court decreed that certain plaintiffs (naming them) recover of the Carroll County Bank the sum of $2,651, and that the same be distributed among them in proportion to the amounts paid by them as sureties; and the bank appealed.

No disposition was made, so far as the record in this court shows, of the cross complaint.

The evidence sustained the findings of the court as to the facts, unless it fails to do so as to the amount paid by the sureties and the sum appropriated by the bank to the payment of the debts owing to it by Maples, and in that respect we find no error prejudicial to the appellant.

Appellant contends that one of the debts paid out of the moneys collected by Maples as taxes for the state was a debt which A. S. Bobo owed to it, and was paid on a check drawn on it in his favor by Maples, and that it is not bound to refund the money used in paying it. But the facts, as we understand them, are as follows: On the 12th day of August, 1896, the bank loaned to Maples, for the purpose of enabling him to make good the sum which he was owing for taxes collected in 1896 for the year 1895, the amount of $2,500. Bobo executed and delivered to the bank his note for this amount, and deposited it with Carroll county warrants as security. The money loaned was placed by the bank to the credit of Maples, who was to repay it. Bobo was to pay the note in the event Maples did not. On the 28th of April, 1897, Bobo delivered to the bank a check, drawn on it by Maples in his (Bobo's) favor, for $2,670, to pay the $2,500 so loaned and interest thereon. The check was paid by the bank appropriating the moneys collected as taxes for the state, and deposited with it by the collector, Maples. The debt paid was in fact Maples' and Bobo's note, and county warrants were held as security for the same. Under these circumstances the appropriation of the money to the payment of the check was fraudulent and void, and the bank is still bound for the money so used.

"When money is placed as a general deposit in a bank, it is no longer the property of the depositor, but immediately becomes the money of the bank. The depositor becomes the creditor of

the bank, and the bank his debtor; and the bank is bound by an implied contract to honor the checks of the depositor to the extent of his deposit. When his checks are drawn in proper form, the bank is bound to honor them. It cannot excuse a refusal to pay them by showing that it had reason to believe that the checks were given for an unlawful purpose, or that other persons had liens or claims on the money deposited." But there is an exception to this rule. If the banker has notice that the fund does not belong to the depositor, and the check is drawn to pay a debt due the bank, then the banker would be affected with a knowledge of the unlawful intent, and would be in duty bound to dishonor the check, and, if he did not do so, would be a participant in the profits of the fraud, and liable to the owner of the fund for all moneys appropriated to its payment. *Boone County Bank* v. *Byrum,* 68 Ark. 71, 56 S. W. Rep. 532; *Bank of Greensboro* v. *Clapp,* 76 N. C. 482; *Central National Bank* v. *Conn. Mut. Life Ins. Co.* 104 U. S. 54; *Commercial Bank v. Jones,* 18 Texas, 811; 1 Morse, Banks and Banking (3d Ed.) § 317.

The plaintiffs are entitled to be subrogated to the rights of the state to the fund appropriated to the payment of the debts owing to it by the collector, Maples, to the extent of the moneys paid by them as sureties. *Boone County Bank* v. *Byrum,* 68 Ark. 71, 56 S. W. Rep. 532.

Decree affirmed.

HUGHES, J., absent.