BLALOCK *v.* BANK OF McCRORY.

Opinion delivered March 1, 1926.

1. BANKS AND BANKING—LIABILITY FOR DEPOSIT.—Where, under the terms of Special Acts 1923, p. 314, money was deposited in a certain bank to the credit of the county treasurer to pay the expenses of a special election to be held on the question of removal of the county seat, the relation of debtor and creditor was created between the bank and the county treasurer.

2. ELECTIONS—REFUSAL OF ELECTION COMMISSIONERS TO ACT.—Where the commissioners appointed by Special Acts 1923, p. 314, refused to hold the special election on the day designated by order of the county court, as provided by said act, the county judge and sheriff were authorized by Crawford & Moses' Dig., § 3714, to act in their place and to order the election.

3. ELECTIONS—REFUSAL OF COMMISSIONERS TO ACT.—Where the commissioners appointed by Special Acts 1923, p. 314, refused to hold the special election therein provided for on the day designated by the county court because of their mistaken opinion that the proceedings were stayed by an appeal taken from the order of the county court, their conduct amounted to a refusal to act, within Crawford & Moses' Dig., § 3714, authorizing certain county officers to act in the place of such commissioners.

Appeal from Woodruff Circuit Court, Southern District; *E. D. Robertson,* Judge; reversed.

*J. F. Summers,* for appellant.

*Roy D. Campbell,* for appellee.

McCULLOCH, C. J. Appellant is the county treasurer of Woodruff County, and, as such, instituted this action against appellee, a banking institution in the town of McCrory, to recover a certain amount of funds deposited in the bank to the credit of the county treasurer, and alleged to have been wrongfully withheld by the appellee when checks were lawfully drawn thereon by the treasurer.

The General Assembly of 1923 enacted a special statute, applicable only to Woodruff County (Special Acts 1923, p. 314), providing for an election to be held in that county on the question of removal of the county seat from Augusta to McCrory. The act provides, in substance, that whenever one hundred or more qualified

electors of the county should file a petition in the county court asking for the removal of the county seat from Augusta to McCrory, the court should, on the first day of the next term after the filing of the petition, order an election to be held at all the voting places in the county, on the date fixed by the court, and that the election commissioners of the county should give notice of the election by publication in a newspaper and by posting handbills. The statute prescribes the form of the ballot, and contains a provision that all the general election laws, so far as applicable, shall govern the election therein provided for. There is also a provision that "any officer, commissioner, agent, or other person required to perform any duties or to do any act under the provisions of this 'act, and failing or refusing to do or perform the same, shall be compelled by mandamus to do or perform the duties and things required." There is still another provision to the effect that the expenses of holding the election should be paid by the citizens of the town of McCrory, and that, immediately after the passage of the statute, the citizens of that town should deposit the sum of $400 in the Bank of McCrory, "subject to the check of the county treasurer, for the purpose of paying expenses of said election."

A petition of more than one hundred qualified electors of Woodruff County was duly presented to the county court, praying for the holding of an election in the county on the question of the removal of the county seat, and the court made an order fixing May 12, 1923, as the date for the election. The citizens of McCrory had previously made the deposit of the $400 with the Bank of McCrory to the credit of the county treasurer. When the petition for the election was heard by the county court, certain citizens of the county appeared before the court and filed a remonstrance, and, after the order was made by the court, they appealed from it to the circuit court. A certified copy of the order of the county court was served on the election commissioners, and at a meeting of the commissioners a resolution was passed by a

vote of two of the commissioners reciting the fact that an appeal had been prosecuted from the order of the court fixing the date of the election, and postponing the calling of the election until after the proceedings had been disposed of in the circuit court on appeal. The two commissioners then proceeded to give notice by publication that no election would be held on the date fixed by the county court. The other commissioner disregarded this action of the majority, and, acting with the county judge and sheriff of the county, proceeded to give notice in accordance with the statute and make preparations for the holding of the election, and the election was held on the day fixed by the county court. In many of the townships no election was held, but there was in fact an election held in some of the townships, and the majority of the votes cast was against the removal of the county seat. Expenses were incurred by the commissioners, and checks were issued by the treasurer on the Bank of McCrory to pay those expenses, but payment was refused. These facts are all shown by the evidence in the trial below. The trial was before the court sitting as a jury, and the court found that the election was not legally held, and that the treasurer had no authority to draw checks on the deposited funds to pay the expenses of the election.

The material facts are undisputed, and it is only necessary to determine whether or not the court was correct in its application of the law. We pass over the question as to the validity of the provision of the statute in regard to the deposit of funds by the citizens of the town of McCrory, as there is no issue raised on that feature of the case. The funds had been deposited there, and thereby came into the hands of the treasurer, and, like any other deposit, created the relation of debtor and creditor between appellant as treasurer and the bank as depositary. *Carroll County Bank* v. *Rhodes,* 69 Ark. 43. The citizens of the town had no further concern with, or interest in, the funds, and there is no one else to challenge the validity of the statute.

Counsel for appellee defend the judgment of the trial court on the ground that the commissioners alone were authorized to give notice of the election, and contend that, as this was not done, the court was correct in holding that the election was void. Counsel rely upon the provision of the special statute which authorizes mandamus to compel the commissioners to perform their duties under the statute. It is argued that this is exclusive of all other remedies, and that the provision in the general election law, with reference to the county officers performing the duties of commissioners (Crawford & Moses' Digest, § 3714), has no application. The section just referred to provides that if any vacancy occurs in the county board of commissioners, or "if a majority of the county commissioners shall resign, refuse to act, die or their places become vacant from any cause, so that there shall not be a quorum in office at the time that said board is required to do and perform any of the acts or things by this act required of them, then, and in that event, the county judge, sheriff and county clerk shall, in the order herein named, fill said vacancies for the time, and shall perform the duties of election commissioners." We are of the opinion that the section of the general statute quoted above applied to the special election. The provision for mandamus was intended only as a remedy to compel performance of duty, but it was not the exclusive remedy, and, in case of refusal of the commissioners to act, the county officers named in the statute could act, or interested parties could compel the commissioners themselves to act. The two schemes provided in the general and in the special statute are available, so that the purpose of the law may not be thwarted by refusal of the officers to perform their duties.

It is also urged that the county officers were not authorized to substitute themselves for the commissioners, for the reason that the latter did not in fact refuse to act. We are of the opinion, however, that the attempt to postpone the election fixed by the county court was a refusal to act, for the commissioners had no authority

to fix the day of election; their duties under the statutes of the State were purely ministerial, and, when they refused to perform their duties with reference to the particular election which had been called by authority under the statute, it became the duty of the county officers to perform those duties. Nor did the fact that there had been an appeal from the order of the county court afford justification for the refusal of the county commissioners to give notice of the election. The appeal did not suspend the court's order, and there is no evidence that the order of the court had been suspended by an order or judgment of the circuit court. The order of the county court was in full force, notwithstanding the appeal, and it was the duty of the commissioners to obey the law with respect to holding the election. According to the undisputed evidence in the case, the notice of the election was properly given by the county judge and sheriff, acting in conjunction with the commissioner who had not refused, and the trial court therefore erred in holding that the election was not legal. The fact that irregularities occurred in the election itself, if there were any such, does not prevent the use of the funds in paying the expenses. At any rate, the depositary, holding the funds as the creditor of the county treasurer, had no legal right to withhold the same under the claim that the expenses had not been legally incurred.

The judgment of the circuit court is therefore reversed, and the facts being fully developed and undisputed, judgment will be entered here in favor of appellant.