HELENA v. FIRST NATIONAL BANK OF HELENA.

Opinion delivered March 7, 1927.

1. BANKS AND BANKING—CONVERSION OF TRUST FUND.—Where bank officers know that a fund on deposit is a trust fund, they cannot appropriate that fund to the private benefit of the bank or knowingly participate with the trustee in appropriating the fund to his own use, without being liable to refund the money.

2. TRUSTS—DEPOSIT OF TRUST FUND.—A trustee may legally deposit the trust funds in a bank to his individual account and credit, and knowledge of the bank that a fund so credited is a trust fund does not affect the legal character of the act.

3. BANKS AND BANKING—DEPOSIT OF TRUST FUNDS.—A bank has a right to presume that a trustee will apply trust funds deposited to his individual credit to proper purposes under the trust.

4. BANKS AND BANKING—DEPOSIT OF TRUST FUND.—The mere fact that a bank knows funds credited to a depositor individually are trust funds does not charge the bank with notice of his intention to misappropriate them or put it upon notice that such was his intention.

Appeal from Phillips Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

### STATEMENT OF FACTS.

The city of Helena brought this suit in equity against the First National Bank of Helena and its stockholders for the purpose of following and recovering the sum of $51,618.62 which, it was claimed, the bank had knowingly allowed Joseph C. Myers, as treasurer of the city, to convert to his own use. The bank answered and denied all the material allegations of the complaint. It specifically denied that it had allowed or in any way participated in the conversion of the funds of the city of Helena by its former treasurer.

The basic facts necessary to a determination of the issues raised by the appeal may be briefly stated as follows: On May 9, 1914, Joseph C. Myers was elected treasurer of the city of Helena, and continued in office until May 3, 1922, at which time he resigned. Joseph C. Myers, as treasurer of the city of Helena, deposited in the First National Bank of Helena, from time to time, more than $110,000 of the funds of the city. The deposits were placed in the bank by Myers in his individual name, with knowledge on the part of the bank that the funds were the funds of the city of Helena, and had come to his hands as city treasurer. Joseph C. Myers issued his own checks on said funds from time to time, until about the time he resigned, when an investigation showed that he was short in his accounts as city treasurer in the sum of $51,618.62. The funds, so far as the record discloses any actual knowledge on the part of the bank, showed that it believed that Myers was paying out the funds in behalf

of the city of Helena to liquidate its indebtedness for current expenses of running the city government and for other legal debts of the city. The evidence shows that all the funds were drawn out on checks signed by Joseph C. Myers, and there is nothing in the record to show that any of these amounts were paid to the bank, or that it received any benefit therefrom. The officers knew, in a general way, that Myers was issuing the checks to persons having claims against the city, but never made any inquiry about the matter or attempted to see that the funds were paid out to those having legal demands against the city. Myers did not deposit any individual funds in the bank, and the officers of the bank knew that the money deposited by him belonged to the city of Helena. Myers did not have the checks in his possession, and did not know where they were. He had no way of ascertaining what percentage of the amount paid out on his personal checks went to the benefit of the city of Helena. He could only state, in a general way, that the money was checked out by him for city purposes, but he was not able to account for the shortage in his accounts as treasurer. Myers, during all this time, was engaged in insurance business, but carried his accounts in that business under his firm name and checked it out that way. The largest part of his business account was kept in another bank.

The chancellor appointed a master, who filed a report finding the facts to be substantially as stated above. Exceptions were duly filed to the report of the master by the plaintiff. The chancellor approved the report of the master, and found the issues generally in favor of the defendants. A decree was entered of record in favor of the defendants, and to reverse that decree the plaintiff has duly prosecuted an appeal to this court.

*John E. Miller* and *C. E. Yingling*, for appellant.

*Brewer & Cracraft* and *W. G. Dinning*, for appellee.

HART, C. J., (after stating the facts). The general principle governing the bank's liability is that the officers of the bank, who know that a fund on deposit is a trust

fund, cannot appropriate that fund to the private benefit of the bank, or, where charged with notice of the conversion of the trustee, participate with him in appropriating it to his own use, without being liable to refund the money, if the appropriation is a breach of the trust. *Allen* v. *Puritan Trust Co.,* 211 (Mass.) 409, 97 N. E. 916, L. R. A. 1915C, 518; and *Blanton* v. *First National Bank of Forrest City,* 136 Ark. 441, 206 S. W. 745.

The rule itself and the reasons for it are clearly stated by the Maryland Court of Appeals in *Duckett* v. *National Mechanics' Bank of Baltimore,* 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513. We quote from the opinion the following: "It is immaterial, so far as respects the duty of the bank to the depositor, in what capacity the depositor holds or possesses the fund which he places on deposit. The obligation of the bank is simply to keep the fund safely and to return it to the proper person, or to pay it to his order. If it be deposited by one as trustee, the depositor, as trustee, has the right to withdraw it, and the bank, in the absence of knowledge or notice to the contrary, would be bound to assume that the trustee would appropriate the money, when drawn, to a proper use. Any other rule would throw upon a bank the duty of inquiring as to the appropriation of every fund deposited by a trustee or other like fiduciary, and the imposition of such a duty would practically put an end to the banking business, because no bank could possibly conduct business if, without fault on its part, it were held accountable for the misconduct or malversation of its depositors who occupy some fiduciary relation to the fund placed by them with the bank. In the absence of notice or knowledge, a bank cannot question the right of its customer to withdraw funds, nor refuse (except in the instances already noted) to honor his demands by check; and therefore, even though the deposit be to the customer's credit in trust, the bank is under no obligation to look after the appropriation of the trust funds when withdrawn, or to protect the trust by setting up a *jus*

*tertii* against a demand.  But, if the bank has notice or knowledge that a breach of trust is being committed by an improper withdrawal of funds, or if it participates in the profits or fruits of the fraud, then it will be undoubtedly liable.''

As said in *National Bank* v. *Insurance Co.*, 104 U. S. 54: ''A bank account, it is true, even when it is a trust fund, and designated as such by being kept in the name of the depositor as trustee, differs from other trust funds which are permanently invested in the name of trustees for the sake of being held as such; for a bank account is made to be checked against, and represents a series of current transactions. The contract between the bank and the depositor is that the former will pay according to the checks of the latter, and, when drawn in proper form, the bank is bound to presume that the trustee is in the course of lawfully performing his duty, and to honor them accordingly.''

It results from the principles of law decided in these cases, and many others which might be cited, that a trustee may legally deposit the trust funds in a bank to his individual account and credit, and that the knowledge on the part of the bank of the nature of the fund received and credited does not affect the character of the act. The reason is that the bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust.

The undisputed evidence in this case shows that the money in question was deposited by Myers as treasurer of the city of Helena and that the bank knew that the funds deposited belonged to the city. The deposits were made in the individual name of Myers, and were checked out in that way.  In 1922 an investigation showed that Myers was short in his accounts as city treasurer in the sum of $51,618.62.

It is not claimed or proved that the bank received any benefit from the conversion of the funds by Myers. The record does not show that the bank, in any way, participated in the conversion of the funds or had any

actual knowledge that Myers was checking out the funds for his individual benefit.   The officers of the bank knew, in a general way, that the funds were being checked out by Myers to pay debts owed by the city of Helena, and they did not make any investigation to see that all the amounts checked out were applied to the payment of the debts of the city.

It is sought to hold the bank liable on the theory that the attendant circumstances charge it with the knowledge that Myers was misappropriating the funds of the city.   As we have already seen, the deposit by a trustee of funds belonging to the trust estate in his individual name and account at the bank is not a conversion of the trust fund.   There is nothing in the present case from which it might be inferred that the bank participated in the conversion of the funds, except from the fact that it permitted Myers to draw out the funds without seeing to the proper application of them. It is insisted that the bank must have seen to the proper application of the funds, because it allowed Myers to deposit them in his individual name and to check them out that way.   We do not think that this was sufficient to put the bank upon inquiry and to charge it with knowledge that Myers was misappropriating the funds belonging to the city.

In discussing this important question in *Bischoff* v. *Yorkville Bank,* 218 N. Y. 106, 112 N. E. 759, L. R. A. 1916F, p. 1059, the New York Court of Appeals said: "A bank does not become privy to a misappropriation by merely paying or honoring the checks of a depositor drawn upon his individual account, in which there are, in the knowledge of the bank, credits created by deposits of trust funds.   The law does not require the bank, under such facts, to assume the hazard of correctly reading in each check the purpose of the drawer, or, being ignorant of the purpose, to dishonor the check.   The presumption is, and, after the deposits are made, remains until annulled by adequate notice or knowledge, that the depositor would preserve or lawfully apply the trust funds. The contract, arising by implication of law from

a general deposit of moneys in a bank, is that the bank will, whenever required, pay the moneys in such sums and to such persons as the depositor shall direct and designate. Although the depositor is drawing checks which the bank may surmise or suspect are for his personal benefit, it is bound to presume, in the absence of adequate notice to the contrary, that they are properly and lawfully drawn. Adequate notice may come from circumstances which reasonably support the sole inference that a misappropriation is intended, as well as directly.''

To the same effect see *Whiting* v. *Hudson Trust Co.,* 234 N. Y. 394, 138 N. E. 33, 25 A. L. R. 1470.

It is claimed by counsel for the plaintiff that this view is contrary to the rule in *Duckett* v. *National Mechanics' Bank of Baltimore,* 39 L. R. A. 84. We do not agree with counsel in their contention, but are of the opinion that our present view is in accord with the principles decided in that case. In that case one of the checks was received by the bank with explicit directions to deposit it to the credit of a certain named trustee. The bank, instead of depositing it in the name of the individual as trustee, deposited it to the general account of the individual. The court said that the act of marking a trust fund to the personal credit of the trustee was wrong, and that the bank must bear the consequences of allowing the trustee to draw the fund out on his personal account. There the court had under consideration a single transaction, where the bank was the first wrongdoer, and it was properly held that the whole transaction showed that the bank participated in the conversion of the funds by crediting it to the individual and allowing him to draw the fund out that way, instead of crediting the item to him as trustee, as it was directed to do. In the present case, if the bank had been directed to credit the funds to Myers as treasurer, and, instead of doing so, had allowed him to place the account in his own name and check the funds out in that way, it might be inferred that there was an intention from the beginning, participated

in by the bank and Myers, that the funds should be deposited in the individual name of Myers and checked out that way for the purpose of converting them to his own use or diverting them from their proper use. Here there is nothing from which to infer that the bank participated in any wrongdoing by Myers, except the fact that it allowed him to deposit the public funds of the city in his own name and to check them out that way. We think the better rule is to hold this to be insufficient to put the bank upon notice that Myers intended to misappropriate the funds. His account ran through a series of years, and there is nothing whatever in the record to show that the bank assisted him in misappropriating the funds of the city or had any intimation whatever that he was doing so. It is not even claimed that the conversion of the funds resulted in any benefit, directly or indirectly, to the bank. The only reason for holding it liable was that it allowed him to deposit the funds in his own name and to check them out that way. As we have already stated, we think the better view and the one more in accord with reason and justice is that this state of facts is not sufficient to put the bank upon notice that the treasurer intended to misappropriate the funds of the city.

Finally, it is insisted that such a view is contrary to the rule established in *Blanton* v. *First National Bank of Forrest City,* 136 Ark. 441, 206 S. W. 745. We do not agree with counsel for the plaintiff in this contention. In that case, under the facts alleged in the complaint and admitted by the demurrer, the cashier of the bank knew that the money belonged to the ward, and, contrary to explicit directions, he placed the amount to the individual credit of the guardian and allowed her to check out the money for her own private use. Here there was nothing whatever to put the bank upon notice that Myers intended to check out the funds for his own private use except the mere fact that it permitted him to deposit the funds in his individual name in the beginning; and, as we have already seen, this was not sufficient to establish knowl-

edge or notice on the part of the bank, that Myers intended to misappropriate the public funds of the city.

It follows that the decree was correct, and must be affirmed.

KIRBY, J., concurs.