RUSSELL *v.* JOHNSON.

4-4507

Opinion delivered February 1, 1937.

*Fred M. Pickens,* for appellant.
*W. P. Smith,* for appellee.

McHANEY, J. In his lifetime James Masko took out a policy of insurance on his life in the sum of $200, in which his minor son, Leroy Masko, was made beneficiary. In June, 1935, the insured died, and his father, Sol Masko, was appointed guardian of Leroy, the minor. Proof of death was made, and, in July, 1935, the agent of the insurance company, in company with appellee, who is an undertaker in Walnut Ridge, and who had buried James Masko, at an expense of $100, delivered a check for $200 to Sol Masko, as guardian in settlement of its liability under said policy. At that time appellee demanded and received of and from Sol Masko payment of his bill for funeral expenses as aforesaid, taking the check properly indorsed by the guardian and giving him $100 in cash.

Thereafter, on August 15, 1935, Sol Masko, as guardian, brought this action in the circuit court against appellee to recover the money so paid to and received by appellee, as the property of his ward. To the complaint, a demurrer was interposed to the jurisdiction of the court on account of the amount involved, which was over-

ruled, and an answer was filed denying the allegations of the complaint. While the action was pending, Sol Masko died, and appellant was appointed guardian in succession, who, by agreement, was substituted as plaintiff therein. Trial to a jury resulted in an instructed verdict for appellee. The case is here on appeal.

The trial court took the view "that while the guardian was not justified, probably, in paying Mr. Johnson under the circumstances, he did pay it, yet it is not specific property that could be traced and recovered like the recovery of personal property in a replevin suit, as it is just money; and that the suit should be against the guardian and his bondsmen, if the guardian is liable in misappropriating the funds."

It was admitted by counsel for appellant in open court that Sol Masko had an agreement with appellee before he was appointed guardian, to pay the funeral bill of appellee out of said check. For this reason counsel for appellee contends that the action is one *ex contractu*, for money had and received, and was therefore in the exclusive jurisdiction of the court of a justice of the peace, only $100 being involved. We cannot agree with appellee in this contention, as it appears to us to be an action sounding in tort, for the recovery of a trust fund in the hands of the guardian,—a fund belonging to his ward and in which Sol Masko had no personal interest, and which he wrongfully paid to appellee, regardless of his agreement to do so.

The question that has given us most concern is, having voluntarily paid an honest debt, which either he or his decedent's estate owed, with his ward's funds, even though wrongfully, can he recover it from appellee in his own action as guardian? We think this question must be answered in the affirmative.

In *American Surety Co.* v. *Vann*, 135 Ark. 291, 205 S. W. 646, the appellant was surety on the bond of one Hamilton as guardian for certain minors. Hamilton purchased an automobile from Vann for $750 and paid for it with his wards' money. Upon final settlement of the guardian's accounts a judgment was rendered against him and his surety for about $2,000. The surety paid

the amount of the judgment and sued Vann for the money misappropriated by the guardian in the purchase of the automobile, alleging in the complaint that it was bought for his personal use, with the funds of his wards and that these facts were known to Vann at the time of the sale. A demurrer was sustained to this complaint, and in reversing the judgment this court said: "This cause is ruled by the opinions in the cases of *Carroll County Bank* v. *Rhodes,* 69 Ark. 43, 63 S. W. 68, and *Boone County Bank* v. *Byrum,* 68 Ark. 71, 56 S. W. 532. It was held in those cases that a surety who pays a sum of money for his principal is subrogated to the rights of the beneficiary to maintain an action for the money so paid. Those cases are also to the effect that one who receives trust funds from a trustee with knowledge of the fact that the trustee has wrongfully converted these funds to his own use becomes liable therefor to the beneficiary of the trust. Under the allegations of the complaint Vann & Sons became parties to the conversion of these trust funds, and were liable to the minors for the sum so received, who could have maintained an action therefor. The surety upon the bond of their guardian is subrogated to this right, and the court should not have sustained the demurrer."

In *Blanton* v. *First National Bank,* 136 Ark. 441, 206 S. W. 745, the ward brought the action against the bank and it was held that the action could be maintained against the bank as an original proceeding "without the necessity for prior adjustment of the accounts in the probate court as a basis for the action." There the bank was sued because it received a check for deposit to the credit of the guardian's account, but credited it to the individual account of the guardian, thus participating in the misappropriation of the ward's funds. This court, in reversing a judgment sustaining a demurrer to the complaint, said: "The Bank of Forrest City received the money, according to the allegations of the complaint as a trust fund for the benefit of appellant and the other ward and participated in the wrongful conversion of the fund to the individual use of the guardian. So the liability of that bank arose not as a surety for the conduct

of the guardian but as a trustee for or agent of the wards who were entitled to the funds. The rule seems to be correctly stated in 12 R. C. L. 1172, as follows:

" 'On the same principle the ward can follow any other property wrongfully disposed of by the guardian into the hands of third parties, if they had knowledge of such facts as should have put them on inquiry; if, for instance, they had received in payment of a debt of the guardian funds standing in the name of the ward. * * * The pursuing of a claim against the estate of the guardian is not inconsistent with following the assets into the hands of one who received them from the guardian, and the ward will not be compelled to elect between the two modes of redress. It is beyond the power of a guardian or other trustee to bind the estate he represents to any use of its funds by contract with third persons who have knowledge of the character of the property transferred, except in the ordinary and usual course of administration of the trust, and in furtherance of its object. This particularly applies to banks in which funds have been deposited, which by the form of the deposit or otherwise they know to be trust funds, but permit to be transferred to the guardian's personal account or applied to his individual debt.' "

A more recent case in point is *Norvell* v. *McFadden,* 173 Ark. 588, 292 S. W. 1001, where the ward, on becoming of age, brought the action against one to whom the ward's money was wrongfully delivered, who converted same to his own use.

So, it will be seen that it has been consistently held that the surety on the bond of the guardian and the ward himself may recover from one who has knowingly participated in the misappropriation of the trust funds by the guardian. If the ward, on reaching his majority, may do so, it would seem necessarily to follow that the guardian might do so as guardian during his ward's minority, and certainly the guardian in succession could maintain the action, as in this case.

Appellee says it is not necessary for the guardian to obtain an order of the probate court, in instances of this kind, before paying out his ward's money. In this coun-

sel is mistaken. See § 5058, Crawford & Moses' Digest, and cases cited thereunder. Without an order of the probate court, a guardian cannot invade the principal of his ward's estate for any purpose, and the order must be in advance of the expenditure. There was no court order here either before or after the expenditure, and appellee knowingly received and appropriated the funds of the ward.

Therefore, the court erred in directing a verdict for appellee. As the facts are undisputed, a verdict should have been directed for appellant. Judgment will be entered here for appellant against appellee in the sum of $100 and interest from August 15, 1935, and all costs.