Charles CARMICHAEL *v.* SECURITY SAVINGS
& LOAN ASSOCIATION OF CONWAY

78-80                                                574 S.W. 2d 651

Opinion delivered December 4, 1978
(Division II)
[Rehearing denied January 12, 1979.]

*Guy H. Jones, Phil Stratton, Guy Jones, Jr.,* and *Casey Jones,* by: *Phil Stratton,* for appellant.

*Henry & Graddy,* by: *Larry E. Graddy,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Charles Carmichael, while a minor, suffered injuries in an automobile accident, as a result of which he became a quadriplegic. He received a settlement upon an insurance claim arising from these injuries. His father, Levi Carmichael, was appointed his guardian on April 30, 1974. On June 18, 1974, Levi Carmichael purchased a $5,000 savings certificate from appellee Security Savings & Loan Association. The funds used were those of appellant and the certificate was issued to "Levi Carmichael Guardian for Charles Carmichael." The ledger sheet on appellee's books relating to this certificate was in the name of "Levi Carmichael, Guardian for Charles Carmichael." Later, Levi Carmichael borrowed $4,600 from appellee and secured the loan by pledging the certificate of savings issued to him as guardian. Although Levi Carmichael paid some interest on the loan, there was a substantial balance due on the loan when he died on December 7, 1975.

Appellant's demand for payment of the proceeds of the savings certificate was refused by appellee. Instead, appellee tendered the balance due on the certificate after having deducted the balance due on the loan to Levi Carmichael. Appellant, having attained majority, then filed this action for a declaratory judgment seeking to establish his right to the face amount of the certificate plus all accrued interest, free and clear of the pledge. Appellee responded, saying that it had applied a substantial part of these proceeds to the retirement of the loan to Levi Carmichael, in reliance upon the loan agreement with Levi Carmichael and the agreement printed on the signature card which was signed by Levi Carmichael when he opened the savings account represented by the certificate. Appellee also asserted that the guardianship was void as a matter of law, because neither the minor nor anyone else was given notice of the petition upon which the appointment of the guardian was based, and because no bond was made by the guardian. The chancery court dismissed appellant's petition for want of equity, holding that the ac-

tions of appellee were permissible under Ark. Stat. Ann. § 67-1840 (Repl. 1966). We disagree and reverse the decree.

The signature card contained the following language:

Account No. 4237

| | A. | Carmichael | Levi | Guardian for |
|---|---|---|---|---|
| and | B. | Carmichael | Charles | Minor |
| and | C. | | | |

Type All Names:

(Last Name)   (First Name)   (Middle Name)

as joint tenants with right of survivorship and not as tenants by the entirety, the undersigned hereby apply for a savings account in

Security Savings and Loan Association

and for the issuance of evidence thereof in their joint names described as aforesaid. You are directed to act pursuant to any one or more of the joint tenants' signatures, shown below, in any manner in connection with this account and, without limiting the generality of the foregoing, to pay, without any liability for such payment, to any one or the survivor or survivors at any time. This account may be pledged in whole or in part as security for any loan made by you to one or more of the undersigned. Any such pledge shall not operate to sever or terminate either in whole or in part the joint tenancy estate and relationship reflected in or established by this contract. ***

The only signature on the card was that of Levi Carmichael as party A. There was no other specific designation of the capacity in which he signed. There was a place for signature by party B.

The pledge to secure the loan to Levi Carmichael was executed by him without any mention of his capacity as

guardian. There was nothing in the files and records of appellee to indicate that this loan was made for the benefit of the minor ward. No order of court authorizing the loan was presented to appellee. The executive vice-president of appellee testified that it was not customary for anyone to question the guardian when he makes withdrawals from a guardian's account. Appellee has no special signature cards for fiduciary accounts.

The trial court did not rely upon the signature card. Assuming that an appropriately worded signature card could have justified appellee's action, this one did not. There was no joint tenancy and this card did not, and probably could not, establish one. There can be no joint tenancy without two "tenants." There was only one here. No certificate was issued in the joint names of any parties. Levi Carmichael did not sign the card as a joint tenant. The authorization of a pledge of the certificate or the account by any one of two joint tenants is wholly inapplicable to this situation. The sentence relating to a pledge cannot be read in isolation. It must be read in its context. When this is done, it cannot form a basis for a pledge of the certificate and the account it represented. The certificate was not issued to joint tenants or to two persons.

Insofar as pertinent here, Ark. Stat. Ann. § 67-1840 provides:

> 67-1840. Savings accounts of fiduciaries. — An association *** may accept savings accounts in the name of any ***guardian, *** or other ficuciary with or without the designation of the name of the beneficiary or beneficiaries or the court order creating the fiduciary relationship, and any such fiduciary shall have power to vote as a member, to open and make additions to, and to withdraw from any such savings account in whole or in part. The payment or delivery of rights to any such fiduciary or a receipt or acquittance signed by any such fiduciary to whom any payment or delivery of rights is made shall be valid and sufficient release and discharge of an association. *** Unless the written agreement or court order filed with the association at the time an ac-

count is opened by a fiduciary provides otherwise, the association may make loans on the security of the savings account, pay withdrawals to the fiduciary personally or as directed by him, and otherwise deal with the account, in whole or in part, without regard to any notice to the contrary, as directed by such fiduciary, *** so long as *** such fiduciary is living, ***

The guardian did not withdraw any money from the account. There was no payment to the guardian, nor was there any "delivery of rights" to him. The authority, if found in this section, must be based upon the statement that the association "may make loans on the security of the savings account, pay withdrawals . . . as directed by him [the fiduciary], and otherwise deal with the account, in whole or in part, without regard to any notice to the contrary, as directed by such fiduciary, so long as such fiduciary is living. . . " At the time appellee applied funds represented by this certificate, Levi Carmichael was not living. The right to make the application then depends on the right of appellee to act according to directions given by Levi Carmichael during his lifetime. The only such directions were contained in the pledge, which was actually a part of a "Savings Loan Agreement" evidencing the loan. That pledge reads:

The undersigned hereby pledges the account of the undersigned in the said Association, No. 4237, as security for said debt and authorizes any officer of said Association in the event of any default to sign the name of the undersigned to a withdrawal request and to withdraw any part of all of the funds from said account from time to time for interest and principal payment hereon. ***

This agreement was signed "Levi Carmichael," without any reference to his capacity as guardian. The quoted portion, at best, was an attempt to delegate the authority to withdraw money from the account. The act in question only permits the association to disregard notice of the fiduciary relationship when dealing with the account "as directed by the fiduciary." Here, the only time Levi Carmichael attempted to act as fiduciary was when he made the deposit. We do not believe the General Assembly intended to permit a savings associa-

tion to participate in a guardian's self-dealing, from which it benefits, without liability to the ward. The loan agreement, consisting of a promise by "the undersigned," can only be construed as evidencing a loan to Levi Carmichael personally.

The general rule governing such transactions was reiterated in *Drainage District No. 7 v. Citizens Bank of Jonesboro,* 205 Ark. 435, 170 S.W. 2d 60, viz:

> The general rule was recognized in the case of *Helena v. First National Bank,* 173 Ark. 197, 292 S.W. 140, where Chief Justice Hart, speaking for the court said: "The general principle governing the bank's liability is that the officers of the bank, who know that a fund on deposit is a trust fund, cannot appropriate that fund to the private benefit of the bank, or, where charged with notice of the conversion of the trustee, participate with him in appropriating it to his own use, without being liable to refund the money, if the appropriation is a breach of the trust. *Allen v. Puritan Trust Co.,* 211 Mass. 409, 97 N.E. 916, LRA 1915C, 518, and *Blanton v. First National Bank of Forrest City,* 136 Ark. 441, 206 S.W. 745."

See also, *Hartford Accident & Indemnity Co. v. Bradley,* 211 Ark. 1069, 204 S.W. 2d 792. In the *Citizens Bank* case, we held that the bank had permitted the fiduciary to withdraw funds with notice that he was committing a breach of trust, and so was liable for participation in the breach of trust. While factual distinctions might be made, we are convinced that, in the case before us, the association participated in the conversion of the proceeds of the minor's savings account to the use of the guardian and to the benefit of the association.

It is true that a pitiful effort was made to show that the proceeds of the loan were used for the benefit of the minor. Levi Carmichael's widow, the mother of appellant, testified that her husband bought an automobile with the proceeds of the loan. Although she said that the automobile was purchased when she and her husband had been told that appellant would have to go to Houston and that the car they then own-

ed would not make the trip, she said that the title to the car was taken in her husband's name and that its purchase was "mostly" so she and her husband could go visit their son. The automobile was later lost upon her pledge of it as security for another loan of $2,000. It is true that there is no evidence that the association had any notice of the actual use made of the loan proceeds by Levi Carmichael. But it is also true that appellee failed to show that they were used for the benefit of appellant and the chancellor did not so find.

Appellee contends that cases involving banks are not applicable to a savings and loan association and that cases decided prior to 1963, when § 67-1840 was adopted, are not applicable. This may be true when the issue turns upon the question of a guardian's authority to withdraw funds from a savings account, or to borrow money in his capacity as guardian, with the account as security, or to direct payment of funds from the account to a third party. As we have heretofore indicated, we do not read this section to license the association's participation in the guardian's self-dealing in breach of the trust.

It is quite clear that, whatever construction is given this section, it is in derogation of the common law, and is to be strictly construed. See *Wright* v. *Wright,* 248 Ark. 105, 449 S.W. 2d 952; *Grimmett* v. *State,* 251 Ark. 270A, 476 S.W. 2d 217; *Raney* v. *Gunn,* 221 Ark. 10, 253 S.W. 2d 559.

In *Carroll County Bank* v. *Rhodes,* 69 Ark. 43, 63 S.W. 68, we stated the common law thus:

"When money is placed as a general deposit in a bank, it is no longer the property of the depositor, but immediately becomes the money of the bank. The depositor becomes the creditor of the bank, and the bank is his debtor; and the bank is bound by an implied contract to honor the checks of the depositor to the extent of his deposit. When his checks are drawn in proper form, the bank is bound to honor them. It cannot excuse a refusal to pay them by showing that it had reason to believe that the checks were given for an unlawful purpose, or that other persons had liens or claims on the

money deposited." But there is an exception to this rule. If the banker has notice that the fund does not belong to the depositor, and the check is drawn to pay a debt due the bank, then the banker would be affected with a knowledge of the unlawful intent, and would be in duty bound to dishonor the check, and, if he did not do so, would be a participant in the profits of the fraud, and liable to the owner of the fund for all moneys appropriated to its payment. ***

See also, Annot. 145 ALR 445, 446.

Under the law in effect prior to the passage of § 67-1840, the association, in order to protect itself from liability, would probably have felt it necessary to require an order of the probate court before paying out any of the principal of the ward's estate. See *Russell* v. *Johnson*, 193 Ark. 541, 101 S.W. 2d 172. The enactment of the section in question relieved the bank of this burden, but we do not construe it to permit the loan transaction in this case.

It is true that we have placed reliance upon cases involving banks rather than savings and loan associations. We cannot see any reason for making a distinction in a case such as this, unless that distinction is made by statute. We note, in that connection, that the General Assembly passed Act 496 in 1921, adding a section [Ark. Stat. Ann. § 67-522 (Repl. 1966)] to the banking law. This section, treating dealings with fiduciaries, reads:

A bank dealing, whether to its own benefit or otherwise, with, through or under any person, who is or may be an agent, trustee or other fiduciary, or a corporate officer, agent or employee, or a partnership member or representative, shall not be deemed to have notice of or be obliged to inquire as to any lack of or limitation upon the power of such person by reason in and of itself either of the fact that such person has executed in his representative capacity and is himself the payee or indorsee of any check, bill, note or other promise or order, or of the use of descriptive words in connection with his deposit account or accounts, any transfer,

certificate or memorandum thereof, or in connection with any signature or indorsement of such person. \*\*\*

Since the passage of that act, we have held that a bank is liable when it participates in, and benefits from, a breach of trust by a fiduciary. See, e.g., *Drainage District No. 7 of Poinsett County* v. *Citizens Bank of Jonesboro,* supra; *Hartford Accident & Indemnity Co.* v. *Bradley,* supra. Of course, a bank cannot be held liable in the absence of notice of an intention by the fiduciary to misappropriate the trust fund. *Pine Bluff National Bank* v. *Kesterson,* 257 Ark. 813, 520 S.W. 2d 253. But the pledge of the trust fund to secure Levi Carmichael's personal debt was a misappropriation of the trust fund from which the association benefitted.

A strict construction of § 67-1840 requires that we reverse the decree, with instructions to the trial court to render judgment in favor of appellant.

We agree. Harris, C.J., and Byrd and Hickman, JJ.