The Honorable Beverly Pyle State Representative 1017 Dorothy Drive Cedarville, Arkansas 72932-9501
Dear Representative Pyle:
I am writing in response to your request for an opinion on the following questions regarding authorizing ordinance requirements under A.C.A. § 14-42-107 (Supp. 2007):
 1. Must an authorizing ordinance enacted pursuant to A.C.A. 14-42-107(b)(1) specifically address each covered situation on its own merits, or is a blanket authorization allowed?
 2. If an authorizing ordinance must specifically address each situation falling under A.C.A. 14-42-107(b)(1)'s general prohibition, what should the authorizing ordinance contain? That is, ideally, what content is required for the ordinance to comply with the statute?
RESPONSE
Subsection 14-42-107 apparently authorizes a city to enact an ordinance enabling one or more municipal officers and employees or particular groups of such employees to avoid what would otherwise be common law and statutory strictures upon their ability to contract with the city. The statute authorizes an ordinance "permitting aldermen, council members, officials, or municipal employees to conduct business with the city and prescribing the extent of this authority." The *Page 2 
use of the plural in this statute suggests that the sanctioning of such activity by more than one employee in a single ordinance might be permissible, although the directive that the ordinance prescribe "the extent of this authority" and that the conduct be "specifically permitted" suggests that the legislature did not intend to enact a "blanket authorization" for municipal officials and employees to engage in any and all varieties of self-interested transactions with the city. Legislative clarification on this point appears warranted.
With respect to your second question, while I question that the statute requires a case-by-case authorizing ordinance, it is my understanding that such ordinances have been commonly enacted. Any such ordinance would presumably identify the affected officer(s) and/or employee(s) and identify the limitations upon the exception to the general common-law proscription against self-dealing.
Question 1: Must an authorizing ordinance enacted pursuant to A.C.A.14-42-107(b)(1) specifically address each covered situation on its ownmerits, or is a blanket authorization allowed?
If by "blanket authorization" you mean an ordinance that would simply authorize all city officials and employees to enter into any variety of contract with the city that would involve financial benefits to the officials or employees, I believe the answer to your question might well be "no." It appears, however, that a city could enact a generally applicable ordinance that imposes specified and reasonable restrictions upon certain types of transactions.
Section 14-42-107(b) of the Arkansas Code (Supp. 2007) is an ethics statute that carves out an exception to the common-law proscription against conflicts of interest.[1] It does so by authorizing cities to adopt ordinances that would allow *Page 3 
municipal officers and employees to enter into what would otherwise be prohibited self-interested transactions so long as they obtain prior approval of the city council. Specifically, the statute provides:
 (b)(1) No alderman, council member, official, or municipal employee shall be interested, directly or indirectly, in the profits of any contract for furnishing supplies, equipment, or services to the municipality unless the governing body of the city has enacted an ordinance specifically permitting aldermen, council members, officials, or municipal employees to conduct business with the city and prescribing the extent of this authority.
 (2) The prohibition prescribed in this subsection shall not apply to contracts for furnishing supplies, equipment, or services to be performed for a municipality by a corporation in which no alderman, council member, official, or municipal employee holds any executive or managerial office or by a corporation in which a controlling interest is held by stockholders who are not aldermen or council members.
(Emphasis added.)
Your request closely resembles one posed to one of my predecessors in Op. Att'y Gen. 90-160, which addressed the following question relating to cities with the city-manager form of government: *Page 4 
 May the City adopt an ordinance granting approval for all officers and employees to conduct business with the City in a manner and on the same basis as all others conducting business with the City? Does the language of 14-47-138 [sic: 14-47-137] require that the ordinance must be specific to each individual officer of employee by name?
Subsection (a) of A.C.A. § 14-47-137 (Repl. 1998) provides as follows:
 (1) No officer or employee elected or appointed in any city shall be interested, directly or indirectly, in any contract or job for work or materials, or the profits thereof, or service to be furnished or performed for the city unless the board of directors of the city shall have enacted an ordinance specifically permitting an officer or employee to conduct business with the city and prescribing the extent of this authority.
 (2) This prohibition shall not apply to contracts for the furnishing of supplies, equipment, or services to be performed for a municipality by a corporation in which no officer holds any executive or managerial office, or by a corporation in which a controlling interest is held by stockholders who are not officers or employees.
(Emphasis added.)
In response to the question posed in Opinion 90-160, my predecessor offered the following analysis:
 In my opinion, the relevant language of Section 14-47-137 suggests that the answer to the first part of this question is "no." Subsection (a)(1) of 14-47-137 outlines the prohibited conduct and then authorizes an exception where "the board of directors of the city shall have enacted an ordinance specifically permitting an officer or employee to conduct business with the city and prescribing the extent of this authority." Although this language is not absolutely clear, the requirement that the ordinance shall "specifically" permit "an officer or employee" to conduct business with the city reflects legislative intent in favor of a case-by-case determination. It is also *Page 5 
significant to note the difference between this language and that of A.C.A. 14-42-107 which provides for an exception where the city enacts an ordinance "specifically permitting aldermen or council members to conduct business with the city . . ." A.C.A. 14-42-107(b)(1). . . .
(Emphasis added in original opinion.)
Subsection (a) of A.C.A. § 14-47-137, discussed in Opinion 90-160, is distinguishable from A.C.A. § 14-42-107 in two material respects: first, the former statute applies to cities with a city-manager form of government whereas A.C.A. § 14-42-107 applies to municipalities generally; and, secondly, as noted in the above excerpt, A.C.A. §14-42-107 authorizes an ordinance "specifically" applying to "aldermen or council members" as a group, whereas A.C.A. § 14-47-137 authorizes only an ordinance applying to "an officer or employee."
My predecessor's tentative conclusion that A.C.A. § 14-47-137 would not support a "blanket authorization" of the sort referenced in your request appears to have been based on two terms of the statute: first, the provision that the ordinance "specifically" indicate what transactions involving self-interest might proceed with the city directors' approval; and, secondly, the provision that such approval be for a particular transaction involving "an officer or employee." My predecessor distinguished the legislature's use of the singular in this statute from the plural "aldermen or council members" in A.C.A. §14-42-107, apparently implying that the latter statute might in fact authorize a "blanket authorization" for municipal officers and employees in general to engage in transactions with the city that serve their personal interests.
Although I concur in my predecessor's conclusion, I feel obliged to offer some elaboration. In construing the interplay between these two statutes, I am guided by the following principles of construction:
 The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary meaning and usually accepted meaning in common language. Weiss v. McFadden, 353 Ark. 868, 120 S.W.3d 545
(2003). We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Page 6 Ozark Gas Pipeline Corp. v. Arkansas Pub. Serv. Comm'n, 342 Ark. 591, 29 S.W.3d 730 (2000). When the language of the statute is plain and unambiguous, there is no need to resort to rules of statutory construction. Weiss v. McFadden, supra. When the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. Id.
Macsteel, Parnell Consultants v. Ar. Ok. Gas Corp., 363 Ark. 22,210 S.W.3d 878 (2005); see also Ops. Att'y Gen. 2005-072 2004-339.
Applying these principles, I agree with my predecessor that the plural reference to "aldermen, council members, officials, or municipal employees" in A.C.A. § 14-42-107(b)(1) is unambiguous, suggesting that the referenced ordinance might indeed apply to these officers and employees as a group, rather than only on an individual basis.[2]
However, this statute, like A.C.A. § 14-47-137, further requires that the ordinance be one "specifically permitting" the self-interested transaction(s) and "specifically . . . prescribing the extent of this authority." These latter provisions would seem to support the conclusion that the legislature did not intend to afford cities any sort of open-ended authority to approve any and all self-interested transactions among the city and its officers or employees, irrespective of whether the services might be conveniently and economically provided without incurring what would have been a conflict at common law.
At the very least, the use of the plural in A.C.A. § 14-42-107 appears to authorize a city to issue an ordinance regulating municipal transactions with multiple municipal officials or employees, subject to the condition that the restrictions on such transactions be reasonable and "specifically" drawn. However, the permissible scope of any such "specifically" drawn ordinance is not entirely clear. *Page 7 
Legislative clarification regarding the extent of a city's authority to approve self-interested transactions appears warranted.
Question 2: If an authorizing ordinance must specifically address eachsituation falling under A.C.A. 14-42-107(b)(1)'s general prohibition,what should the authorizing ordinance contain? That is, ideally, whatcontent is required for the ordinance to comply with the statute?
As noted in my response to your previous question, in light of its use of the plural, A.C.A. § 14-42-107(b)(1) appears to support the conclusion that an authorizing ordinance can be what you term "generic" to some undetermined extent. However, I feel obliged to note that statutes in derogation of the common law are to be strictly construed,see Thompson v. Bank of America, 356 Ark. 576, 157 S.W.3d 174 (2004);Carmichael v. Security Sav. Loan Ass'n of Conway, 264 Ark. 657,574 S.W.2d 651 (1978) — a fact that would support reading the statute as narrowly as possible to minimize any conflict with common law. I will further note that in addressing the scope of A.C.A. § 14-42-107(b)(1), this office has addressed only ordinances enacted under this statute that were case-specific in their scope. See, e.g., Ops. Att'y Gen.2005-076 (opining that an alderman could not serve as a "paid neighborhood watch coordinator" unless the city council had specifically authorized the dual service by ordinance); 2004-230 (opining that "the legislature's apparent purpose in enacting A.C.A. § 14-42-107(b) was to prohibit any transaction between a city and a corporation whose affairs are subject to strong influence by a municipal officer or employee with a direct financial interest in the contract unless the city council expressly approves the transaction"). Nevertheless, in contrast to the situation regarding A.C.A. § 14-47-137, this office has never before been directly addressed with the question of whether A.C.A. § 14-42-107
would enable a city to issue an ordinance authorizing all municipal officers and employees to engage in self-interested transactions with the city. Furthermore, as discussed above, I believe A.C.A. §14-42-107(b) is sufficiently unambiguous to support my opining that the statute would support a city's enacting some variety of blanket ordinance.
I do not feel, however, that the summary contained in the preceding paragraph renders your second question entirely moot. The apparent fact is that cities continue to enact case-specific ordinances pursuant to A.C.A. § 14-42-107, leaving open the question of what such ordinances should contain. Unfortunately, as the foregoing discussion should suggest, the statute is far from instructive regarding *Page 8 
what restrictions will apply in drafting either an individually or a generally applicable ordinance. I can do no more than echo the statutory authorization to enact an ordinance "specifically permitting aldermen, council members, officials or municipal employees to conduct business with the city and prescribing the extent of this authority." A.C.A. § 14-42-107(b)(1). On its face, this provision would appear to require that the ordinance specifically identify which officer(s) or employee(s) are relieved of the statutory prohibition and the extent to which they are relieved from the prohibition. Both logic and prudence would suggest that in defining the extent of relief afforded, the ordinance should recite the conditions that prompted the city council to approve a transaction that would otherwise be prohibited. I am not prepared to opine, however, that any such explanation is mandated by the express terms of the statute.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] In Op. Att'y Gen. 2002-273, my predecessor summarized the common-law rule as follows:
 The common law prohibition against conflicts of interest is reflected in the following description of the public policy underlying the principle:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw.
 67 C.J.S. Officers § 204. See also Ops. Att'y Gen. 2001-042; 2000-072; 99-349; 98-275; 94-283; and 94-446, citing Van Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 (1940); Madden v. United States Associates, 40 Ark. App. 143, 844 S.W.2d 374 (1992); Acme Brick Co. v. Missouri Pacific R.R., 307 Ark. 363, 821 S.W.2d 7 (1991); and 63A Am. Jur. 2d, Public Officers and Employees § 321.
(Emphases added). See also Ops. Att'y Gen. 2005-037 and 2003-007 (discussing in detail common-law conflicts of interest); and A.C.A. § 21-8-304 (Supp. 2007) (codifying certain aspects of the common-law rule).
[2] The plural reference in this statute was enacted pursuant to Acts 1981, No. 485, § 1, as was the requirement of city council approval. Under prior law, an alderman was prohibited from being interested either directly or indirectly in "the profits of any contract or job, for work or services" to be performed for the city unless no alderman held an executive or managerial position in the corporation seeking to perform the services or no aldermen held a controlling interest in the corporation. Acts 1963, No. 182, § 1. Section 2 of this act explained that its enactment was necessary because "[u]nder existing law, considerable doubt exists as to the validity of business transactions between a municipal corporation and various banks, utilities, newspapers, and other services institutions located within the municipality and in which Aldermen or members are minority stockholders. . . ." *Page 1